S00A0759. TENET HEALTHCARE CORPORATION v. LOUISIANA FORUM CORPORATION et al.
(538 SE2d 441)

BENHAM, Chief Justice.

In the case at bar, appellant Tenet Healthcare filed suit on several alleged debts owed by appellee Louisiana Forum, including one evidenced by a promissory note purportedly executed by appellee in favor of a corporation alleged to be appellant's predecessor. During the discovery stage, the trial court granted Louisiana Forum's motion to compel the disclosure of the identity of the anonymous source who had made Tenet Healthcare aware of the existence of the cause of action. At a hearing on the motion to compel, Tenet Healthcare's officials stated they did not know the tipster's identity; however, Tenet's attorney acknowledged he knew the tipster because the tipster was a client who had approached the attorney with the information and had sought legal advice concerning the client's possible exposure for

wrongdoing that the tipster "perhaps had participated in." After consultation, the informant left the information with the attorney with instructions to pass it on to Tenet if Tenet agreed to pay the tipster a portion of the monies recovered from Louisiana Forum. The attorney contacted Tenet, which agreed to the tipster's conditions and retained the attorney's services to pursue the matter. Citing attorney-client privilege and an attorney's ethical duty to keep client secrets, the attorney declined to reveal the identity of the anonymous source because the source had requested that his/her identity and the fact of representation be kept secret.

After determining it was fundamentally unfair to require Louisiana Forum to defend a lawsuit wherein the source's demand for confidentiality precluded challenges to the credibility of the source who had a financial interest in the outcome and to the reliability of the source's information, the trial court ordered Tenet Healthcare and its counsel to reveal the identity of the source within ten days. The trial court's order also stated that Tenet Healthcare's complaint "shall be struck for failure to comply with discovery" should Tenet Healthcare and its counsel fail to comply with the order. In the same order, the trial court issued a certificate of immediate review and relieved Tenet and its attorney of their duty to comply with the order to disclose until resolution of any timely-filed appeal or further order of the trial court. The Court of Appeals denied appellant's application for interlocutory review, and we granted a writ of certiorari to the Court of Appeals, asking the parties to address whether the trial court erred in compelling disclosure of the identity of the anonymous informant and whether the trial court's order erroneously provided for automatic dismissal of the complaint for failure to comply with the discovery order.

1. OCGA § 24-9-24 provides that "[c]ommunications to any attorney or to his employee to be transmitted to the attorney pending his employment or in anticipation thereof shall never be heard by the court. . . ." OCGA § 24-9-25 states that

> [n]o attorney shall be competent or compellable to testify for or against his client to any matter or thing, the knowledge of which he may have acquired from his client by virtue of his employment as attorney or by reason of the anticipated employment of him as attorney. However, an attorney shall be both competent and compellable to testify for or against his client as to any matter or thing, the knowledge of which he may have acquired in any other manner.

These statutory statements of attorney-client privilege are grounded

in public policy[1] which "requires that persons should feel that they may securely say anything to members of the profession in seeking aid in their difficulties, although the person whose advice they seek may have been employed, or may be afterwards employed, against them." *Peek & Sullivan v. Boone*, 90 Ga. 767, 774 (17 SE 66) (1892). The statutes setting out attorney-client privilege are not, however, broadly construed. In *Atlantic Coast Line R. Co. v. Daugherty*, 111 Ga. App. 144 (1) (141 SE2d 112) (1965), the Court of Appeals confined the attorney-client privilege embodied in OCGA §§ 24-9-21 and 24-9-24 "to 'its narrowest permissible limits under the statute of its creation. . . .'" That approach is equally applicable when, as here, OCGA § 24-9-25 is raised. See *Ostroff v. Coyner*, 187 Ga. App. 109 (4) (369 SE2d 298) (1988). Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is "the object of all legal investigation." OCGA § 24-1-2. See also Annot., "Disclosure of Name, Identity, Address, Occupation, or Business of Client as Violation of Attorney-Client Privilege," 16 ALR3d 1047, 1050.

The issue before us is whether an attorney may successfully invoke the attorney-client privilege to keep from revealing the identity of a client who has requested that the client's identity be kept confidential. In the nineteenth century, this Court stated clearly that an attorney "is bound to disclose the name of [the attorney's] client [since] [t]hat disclosure involves no breach of professional confidence." *Martin v. Anderson*, 21 Ga. 301 (hn. 5) (1857). See also *Stephens v. Mattox*, 37 Ga. 289 (hn. 1) (1867), where this Court held that a direct answer to the question of whether a certain person had employed the witness/attorney to bring the suit at bar would not involve a breach of professional confidence. More recently, this Court stated that " '[t]he rule making communications between attorney and client privileged from disclosure does not ordinarily apply where the inquiry is confined to the fact of the attorney's employment and the name of the person employing him.' [Cit.]" *Fowler v. Sheridan*, 157 Ga. 271, 275 (121 SE 308) (1924). Wigmore observes that, while a client

> may in fact desire secrecy and may be able to secure action without appearing as a party to the proceedings, it would be improper to sanction such a wish. Every litigant is in justice entitled to know the identity of his opponents. He cannot be

---

[1] OCGA § 24-9-21 includes communications between attorney and client among the "certain admissions and communications excluded on grounds of public policy."

> obliged to struggle in the dark against unknown forces. . . .
> [T]he privilege cannot be used to evade a client's responsibil-
> ity for the use of legal process.

8 Wigmore, Evidence § 2313 at 609 (McNaughton rev. 1961).

Although the Georgia appellate courts have not enunciated exceptions to this rule of disclosure, the inclusion of the term "ordinarily" in *Fowler* indicates an understanding of the possibility that exceptions exist. Other jurisdictions have recognized as exceptions to the "client identity rule" situations where identifying the client may expose the client to prosecution for criminal acts previously committed and for which the client had consulted the attorney (see, e.g., *Ex parte Enzor*, 117 S2d 361 (Ala. 1960); *Dean v. Dean*, 607 S2d 494 (Fla. App. 1992)), or where disclosure of the client's identity would reveal the substance of confidential attorney-client communications. See, e.g., *In re Grand Jury Subpoena (Alexiou)*, 39 F3d 973 (9th Cir. 1994).

In the case at bar, neither exception, even if recognized, is applicable. First, there is no evidence that the identity of the client is the last link "that could form the chain of testimony necessary to convict an individual of a . . . crime." *Baird v. Koerner*, 279 F2d 623, 633 (9th Cir. 1960). Second, disclosing the client's identity would not reveal the substance of confidential attorney-client communications inasmuch as the substance of the communication, the existence of the promissory note purportedly executed by Louisiana Forum in favor of Tenet's predecessor, was imparted by the client to the attorney in order that the attorney would transmit the information to others, and the attorney did so. See *Fowler v. Sheridan*, supra, 157 Ga. 271 (hn. 1), where this Court held that "[c]ommunications made by a client to an attorney for the purpose of being imparted by [the attorney] to others do not fall within the inhibitions of the law that render an attorney as a witness incompetent to testify to statements or disclosures made to [the attorney] by [the] client." There being no reason to stray from the rule that a client's identity is not covered by the attorney-client privilege, we conclude that the trial court correctly declined to permit the attorney to use the privilege to justify his refusal to supply the requested material.

2. We now turn to the attorney's invocation of his ethical responsibility to keep client secrets. An attorney's ethical and contractual duty to maintain client secrets is distinguishable from the attorney-client privilege. Milich, Georgia Rules of Evidence, § 21.1 (1994). Standard 28 of Rule 4-102 of the Rules and Regulations of the State Bar of Georgia states that "[a] lawyer may not reveal the confidences and secrets of a client," and identifies a "secret" as "information [other than that protected by the attorney-client privilege] gained in the professional relationship that the client has requested to be held

inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client." Standard 28 (c). In contrast to material subject to the attorney-client privilege, a client secret may be revealed by an attorney "when permitted under disciplinary rules or required by law or court order. . . ." Standard 28 (b) (2).

In the case at bar, the trial court issued an order during the discovery process that required the attorney to disclose the client's identity. With regard to the scope of discovery, the Civil Practice Act states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . including the . . . identity . . . of persons having knowledge of any discoverable matter." OCGA § 9-11-26 (b) (1). Through the discovery process, non-privileged information which is in the possession of one party and which gives that party a tactical advantage may be required to be shared with the opposing side. See *Morton v. Gardner*, 242 Ga. 852, 857 (252 SE2d 413) (1979). It is within the trial court's sound legal discretion to determine the permissible extent of discovery, keeping in mind that the discovery procedure is to be construed liberally in favor of supplying a party with the facts. *Deloitte Haskins & Sells v. Green*, 187 Ga. App. 376 (2) (370 SE2d 194) (1988). Inasmuch as we can see no abuse of discretion on the part of the trial court, we affirm that portion of the order requiring Tenet or its attorney to disclose the identity of the tipster.

3. The trial court's order stated that Tenet and its attorney had ten days from the issuance of the order to reveal the identity of the tipster/client, or Tenet's complaint "shall be struck for failure to comply with discovery." In granting the petition for writ of certiorari, we expressed concern over whether the trial court's order provided for an impermissible automatic dismissal of the complaint should Tenet and its attorney not comply timely with the trial court's discovery order.

Failure to comply with a discovery order subjects a party to sanctions under OCGA § 9-11-37 (b) (2), the most severe of which is dismissal of the complaint. The statute provides a two-step procedure by which a party frustrated with his opponent's refusal to submit to discovery may remedy the situation.

First, a motion for order compelling discovery must be made, heard and granted. The obstinate party is then afforded another opportunity to provide discovery. If he fails to do so, the second step is for the court to enter such order as is just, including the imposition of one or more of the sanctions set forth in [OCGA § 9-11-37 (b) (2)].

*Savannah Surety Assoc. v. Master*, 240 Ga. 438, 440 (241 SE2d 192)

(1978). A prospective, self-executing order that automatically dismisses a case cannot be issued by a trial court when granting the motion to compel because

> [a] court cannot assume that a future failure [to comply with discovery orders] will be unjustifiable. It must examine the circumstances retrospectively. This means affording an opportunity to explain the circumstances following the failure; which means, in turn, an express motion and notice to the party concerned.

*Maxey v. Covington*, 126 Ga. App. 197 (190 SE2d 448) (1972). Before imposing the ultimate sanction of dismissal or default judgment for failure to comply with discovery, the trial court must first determine, following notice and an opportunity to be heard, that the party's failure to comply with the order granting the motion to compel was wilful.[2] *Hernandez v. State of Ga.*, 200 Ga. App. 368, 370 (408 SE2d 160) (1991); *Steele v. Colbert*, 182 Ga. App. 680 (356 SE2d 736) (1987). The offending party must be afforded an opportunity to establish that its failure to comply with the trial court's earlier order was not wilful. *Gilbert v. E & W Constr. Co.*, 181 Ga. App. 281 (2) (351 SE2d 523) (1986). See also *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210 (3) (480 SE2d 604) (1997) (Before imposing the ultimate sanction, the trial court must afford the party against whom sanctions are sought an opportunity to explain the relevant circumstances.). However, the trial court need not conduct an evidentiary hearing on the issue of wilfulness in those cases "where the trial court can otherwise determine wilfulness on the part of the party against whom the sanctions are sought." *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182 (402 SE2d 723) (1991).

In essence, what the law contemplates under OCGA § 9-11-37 is a two-step proceeding before the ultimate sanction of dismissal or default judgment may be imposed. First, a motion to compel must be filed and granted; second, after the party seeking sanctions notifies the court and the obstinate party of the latter's failure to comply with the order granting the motion to compel and of the moving party's desire for the imposition of sanctions, the trial court may apply sanctions after giving the obstinate party an opportunity to be heard and determining that the obstinate party's failure to obey was wilful. An

---

[2] A conscious indifference to the consequences of failure to comply with court orders concerning discovery is the equivalent of wilfulness. *Swindell v. Swindell*, 233 Ga. 854 (2) (213 SE2d 697) (1975). See also *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210 (3) (480 SE2d 604) (1997) (A party's conscious or intentional failure to act may constitute the necessary wilfulness).

evidentiary hearing on the issue of wilfulness is not necessary in all cases. Id.

In the case at bar, the order on the motion to compel gave Tenet and its counsel ten days to comply with the order and stated that Tenet's complaint "shall be struck" if the discovery was not forthcoming within the ten-day period. The trial court's order is similar in this respect to those issued in *Stokes v. Taco Bell Corp.*, 229 Ga. App. 558 (494 SE2d 355) (1997) (if the plaintiff failed to comply with the discovery requirements set forth in the order, "her Complaint will be dismissed with prejudice"); *Champion Mgmt. Assn. v. McGahee*, 227 Ga. App. 895 (490 SE2d 215) (1997) (" 'if the Plaintiff fails to comply with this Court's Order [on a motion to compel], Plaintiff's Complaint will be dismissed.' "); *Albers v. Brown*, 177 Ga. App. 620 (2) (340 SE2d 260) (1986) (upon failure to pay sanctions imposed by a specified time, the defendant's answer "shall be stricken and a default judgment entered"); and (*Serwitz v. Gen. Elec. Credit Corp.*, 174 Ga. App. 747 (331 SE2d 95) (1985) (" 'Failure to abide by the above order [granting a motion to compel] will result in a dismissal of [defendant's] answer and a default judgment entered' "). In *Serwitz* and *Albers*, the Court of Appeals found the trial court's order to be an impermissible self-executing order of dismissal; however, no such finding was made in *Stokes* or *McGahee*.

Neither the order in the case before us nor those issued in *Stokes, McGahee, Albers*, and *Serwitz* made the parties aware that an additional step would have to be taken before the sanction would be effective. Compare *Vining v. Kimoto USA*, 209 Ga. App. 296 (1) (433 SE2d 342) (1993), where the trial court's order on the motion to compel set a date by which the plaintiff was to make discovery or suffer the penalty of dismissal "upon the filing of an affidavit by [defendant's] attorney." Since the trial court's order granting the motion to compel states in the imperative that the complaint "shall be struck for failure to comply with discovery" and did not condition the imposition of the ultimate sanction upon the filing of a request therefor and the passage of the concomitant "opportunity to be heard," the order is an impermissible prospective, self-executing order of dismissal. *Serwitz v. Gen. Elec. Credit Corp.*, supra; *Albers v. Brown*, supra. That aspect of the order must be stricken, even though the self-executing provision has not and may never be activated. *Albers v. Brown*, supra, 177 Ga. App. at 622. To the extent that language in *Stokes* and *McGahee* can be construed as finding such an order acceptable, it is disapproved.

*Judgment affirmed with direction. All the Justices concur.*

DECIDED NOVEMBER 13, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000.

*Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom,* for appellant.

*Smith, Gambrell & Russell, William W. Maycock, Elizabeth L. Branch,* for appellees.